UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADIR ABU ALKASSIM HUSSAIN,<br><br>            Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL,<br><br>            Defendant. | Case No.  19-cv-01606-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 23, 28 |

Plaintiff appeals from the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI").  For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** the case for further proceedings.

**I.      BACKGROUND**

Plaintiff filed an application for SSI on March 23, 2015, alleging disability beginning June 1, 2011.  *See* Dkt. 15 (Administrative Record ("AR")) 165-174.  Plaintiff later amended his alleged onset date to March 23, 2015.  AR 41, 271.  An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on March 29, 2018.  AR 18-37.  The ALJ found that Plaintiff had the following severe impairments: "a schizoaffective disorder vs. a bipolar disorder and a polysubstance abuse disorder (alcohol, marijuana, and methamphetamines)."  AR 24.  The ALJ concluded that Plaintiff's mental impairments, including the substance use disorders, met section 12.04 of the listed impairments.  *Id*.  However, the ALJ also concluded that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 26.  The ALJ then determined that if Plaintiff stopped the substance use, he would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with several non-exertional limitations.

AR 27. The ALJ concluded that Plaintiff was not disabled because he was capable of performing a significant number of jobs in the national economy. AR 31.

After the Appeals Council denied review, Plaintiff sought review in this Court. Dkt. 1 (Complaint). In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment (Dkt. 23,[1] 28), which are now ready for decision without oral argument.

## II.   ISSUES FOR REVIEW

1. Did the ALJ err in evaluating the medical evidence; specifically (a) did the ALJ err in evaluating the psychological opinion evidence from state consultants Drs. Lucila and Ying; and (b) did the ALJ provide specific and legitimate reasons for crediting the opinion of consultative examiner Dr. Howard?
2. Is the ALJ's analysis of drug addiction and alcoholism supported by substantial evidence?
3. Did the ALJ err in evaluating Plaintiff's credibility?
4. Did the ALJ err in evaluating lay witness testimony?
5. Is the ALJ's RFC finding supported by substantial evidence?
6. Did the ALJ err in evaluating the testimony of the vocational expert ("VE"); specifically (a) did the ALJ fail to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles; and (b) did the ALJ ignore testimony from the VE indicating that Plaintiff is unemployable?

## III.   STANDARD OF REVIEW

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial

---

[1] Plaintiff originally filed a motion for summary judgment on December 4, 2019. Dkt. 22. On December 6, 2019, Plaintiff filed an amended motion for summary judgment along with a motion for leave to amend. Dkt. 23, 23-1. The Court subsequently granted Plaintiff's motion for leave to amend. Dkt. 24. Accordingly, the amended motion for summary judgment (Dkt. 23) is Plaintiff's operative motion for summary judgment.

evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id*. The Court is "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

**IV.  DISCUSSION**

Plaintiff argues that the ALJ: (1) improperly evaluated the medical evidence; (2) erred in his drug and alcohol analysis; (3) improperly discredited Plaintiff's testimony; (4) improperly ignored lay witness testimony; (5) improperly analyzed Plaintiff's RFC; and (6) improperly evaluated the VE's testimony. Dkt. 23.

    **A.  Medical Evidence**

        **1.  Standard for Evaluating Medical Evidence**

In Social Security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more

weight is given to the opinion of an examining physician than a non-examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. *Ghanim*, 763 F.3d at 1160; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted). Where contradicted, the opinion of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160.

### 2. State Agency Psychological Consultants Drs. Lucila and Ying

Plaintiff challenges the ALJ's evaluation of the opinions of state agency psychological consultants D. Lucila, M.D. and Karen Ying, M.D. Dkt. 23 at 4. Dr. Lucila, who evaluated Plaintiff at the initial level of adjudication, concluded that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, as well as one or two extended episodes of decompensation. AR 82. Dr. Lucila also found that Plaintiff had moderate limitations in the following areas: ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek and to perform at a consistent pace; ability to interact with the general public, supervisors, and coworkers; and ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 84-85. Dr. Ying, who evaluated Plaintiff at the reconsideration level of adjudication, concluded that Plaintiff had moderate limitations in the following areas: ability to understand, remember, and carry out detailed instructions; ability to complete a normal workday and workweek and to perform and a consistent pace; and ability to respond appropriately to changes in the work setting. AR 101-103. Both

4

consulting physicians noted that there was no evidence of any issue with substance abuse/DAA (drug addiction and alcoholism). AR 87; AR 106.

Plaintiff argues the ALJ improperly evaluated this evidence in two specific respects. First, Plaintiff argues that the ALJ entirely ignored Dr. Lucila's opinion. Dkt. 23 at 4. Second, Plaintiff argues that the ALJ mentioned Dr. Ying's opinion only briefly and did not indicate why that opinion should be credited or rejected or how that opinion compared with any other medical opinion in the record. *Id.* The Commissioner responds that any error by the ALJ in discussing the opinions of Drs. Lucila and Yang is harmless because those opinions support the ALJ's ultimate decision on Plaintiff's RFC: that he is "limited to simple, routine tasks with simple work-related decisions" and "occasionally could respond appropriately to supervisors, coworkers, and the public." AR 27; Dkt. 28 at 1-2 (arguing that "both doctors found Plaintiff no more limited, or significantly more capable, than the RFC").

The Court cannot conclude from the ALJ's decision that he properly evaluated the medical evidence. As discussed more fully in Section IV.E. below, the ALJ's ultimate RFC determination included limitations with respect to task complexity and social interaction that are generally consistent with the opinions of Drs. Lucila and Ying that Plaintiff has moderate limitations in the areas of understanding and memory; concentration and persistence; and/or social interaction. AR 84-85, 101-103. However, the ALJ's RFC determination did not contain any limitations concerning Plaintiff's ability to complete a normal workday and workweek and to perform without an unreasonable number and length of rest periods. *See* AR 27. Both Dr. Lucila and Dr. Ying opined that Plaintiff is "moderately limited" in this area. AR 84, 102. But the ALJ did not mention Dr. Lucila's opinion at all, and he did not state what weight he gave to Dr. Ling's opinion. AR 29. In rejecting the opinions of a physician, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Primus v. Massanari*, 55 Fed. Appx. 810, 811 (9th Cir. 2003) (citation omitted). An ALJ's decision does not conform to this standard if he "does not explain the weight, if any, actually accorded to [the physician's] opinion." *Id*. Here, the Court cannot determine based on the ALJ's decision whether he considered Dr. Lucila's opinion, what weight he gave Dr. Ying's opinion, and why he rejected

5

both doctor's opinions regarding Plaintiff's limitations with respect to completing a normal workday and workweek without an unreasonable number and length of rest periods.

This error is not harmless. In response to a hypothetical posed by the ALJ at the hearing, the VE testified that an employee whose "impairment caused him to require rest periods for about 5 to 10 percent of the day" would be "non employable" if the rest periods were "getting to that 10 percent day in and day out." AR 71. Thus, had the ALJ accorded weight to the opinions of Drs. Lucila and Ying regarding Plaintiff's endurance limitations, it could have affected the ultimate disability determination.

Moreover, the ALJ failed to address certain inconsistencies between the opinions of Drs. Lucila and Ying, did not identify any evidence in the record that justified his apparent decision to give the opinion of Dr. Ying more weight than that of Dr. Lucila, and did not discuss how those opinions compared with other medical evidence in the record.

Accordingly, on this issue, Plaintiff's motion for summary judgment is **GRANTED** and the Commissioner's cross-motion is **DENIED**.

### 3. State Consultative Examiner Dr. Howard

Plaintiff also challenges the ALJ's analysis of the opinion of examining physician Jonathan Howard, Psy.D., arguing that the ALJ failed to provide specific and legitimate reasons for crediting Dr. Howard's opinion and rejecting opinions from six other acceptable medical sources. Dkt. 23 at 5-6. Plaintiff's argument with respect to the ALJ's evaluation of medical evidence from Dr. Howard is essentially an attack on the ALJ's reliance on Dr. Howard's opinion regarding the effect of Plaintiff's drug and alcohol use. Accordingly, the Court discusses this argument in the following Section IV.B.

## B. Drug Addiction and Alcoholism Analysis

### 1. Standard for Analyzing Drug Addiction and Alcoholism Analysis

Where there is medical evidence of drug addiction and alcoholism ("DAA"), "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Instead, under provisions of the Contract with America Advancement Act enacted in 1996, an "individual shall not be

6

considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." *Id.* (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing DAA, then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. §§ 404.1535, 416.935.

In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations ... would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor to the determination of disability, and the claimant is disabled, independent of his or her DAA. *See id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant bears the burden of proving that his substance use is not a material contributing factor to his disability. *Parra*, 481 F.3d at 744-45.

"When a claimant is actively abusing drugs or alcohol, determining which limitations would remain when the effects of substance abuse are absent is necessarily hypothetical," although "the ALJ must still develop a full and fair record and support his conclusion with substantial evidence." *Lockwood v. Colvin,* No. 12-cv-00493-NJV, 2013 WL 1964923, at *9 (N.D. Cal. May 10, 2013).

### 2. ALJ's DAA Analysis

The ALJ found that Plaintiff had a polysubstance abuse disorder involving alcohol, marijuana, and methamphetamines. AR 24. The ALJ determined that Plaintiff's mental impairments, including the substance use disorders, met Section 12.04 of the listed impairments. *Id.* The ALJ further determined that if Plaintiff stopped the substance use, the remaining

7

limitations would continue to have a severe impairment or combination of impairments but would no longer meet or medically equal any listed impairment. AR 25-26. The ALJ also concluded that if Plaintiff stopped the substance use, he would have the RFC to perform a full range of light work at all exertional levels, with certain nonexertional limitations relating to task and decision complexity and social interaction. AR 27. In evaluating Plaintiff's DAA, the ALJ expressly relied on the opinion of State agency examiner Jonathan Howard, Psy.D. AR 25-26.

Plaintiff mounts two attacks on the ALJ's DAA analysis. First, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for crediting Dr. Howard's opinion and discounting the opinions of other medical sources. Dkt. 23 at 5-6. In particular, Plaintiff challenges the ALJ's rejection of the opinions of treating providers Janetta Geringson, M.D.; Megan Brown, ASW; W. Boutelle, M.D.; and Evan Schloss, LMFT. *Id.* Plaintiff also challenges the ALJ's rejection of the opinion of examining clinicians Dionne Childs, MS, and Lesleigh Franklin, Ph.D. *Id.* According to Plaintiff, "[t]he ALJ's reasons for rejecting the opinions of these six different providers are essentially the same in each case: 1) they failed to consider illicit drug use and 2) they failed to consider licit drug use." *Id.* at 5 (citing AR 29-30).

Second, Plaintiff argues that the ALJ's DAA analysis was not supported by substantial evidence. Dkt. 23 at 5-7. Plaintiff argues that it was inappropriate for ALJ to rely on Dr. Howard's opinion as the authority for Plaintiff's functioning in the absence of drugs and alcohol because Plaintiff was using marijuana and alcohol during the period of Dr. Howard's evaluation. *Id.* at 7. Plaintiff again argues that the ALJ ignored the findings of two treating providers, Dr. Boutelle and Mr. Schloss, that Plaintiff's mental impairments were not caused by substance abuse. *Id.* (citing AR 538, AR 543). In addition, Plaintiff points to the findings of the state agency psychological consultants, Drs. Lucila and Ying, that found limitations on Plaintiff's functional capacity even though "[t]here is no evidence of any substance abuse disorder/DAA issue." *Id.* at 8 (citing AR 87, AR 106). Plaintiff also cites evidence of multiple toxicology screens showing that Plaintiff tested negative for methamphetamines. *Id.* (citing AR 572, AR 652, AR 620, AR 694, AR 682, AR 801, and AR 807).

In response to these arguments, the Commissioner argues that the ALJ properly rejected the other medical sources identified by Plaintiff both because those providers failed to consider Plaintiff's substance abuse and because their opinions were inconsistent with contemporaneous treatment notes, which the Commissioner characterizes as "describing stable symptoms and significant daily activities." Dkt. 28 at 2-3, 4. The Commissioner points out that the medical source opinions upon which Plaintiff now relies are from before Dr. Ying rendered her opinion on May 2016 that Plaintiff had stable symptoms overall. *Id.* at 3 (citing AR 99). The Commissioner also argues that Dr. Howard evaluated Plaintiff in July 2015, when Plaintiff was not using methamphetamines or at least not to the degree demonstrated in 2016 and 2017, and thus the ALJ properly relied on Dr. Howard's opinion to describe the severity of Plaintiff's impairments in the absence of methamphetamine use. Dkt. 28 at 2 (citing AR 26). The Commissioner also argues that Drs. Lucila and Yang reached their opinions about Plaintiff's RFC after expressly considering Dr. Howard's opinion. *Id.* (citing AR 81, 99, 101-103).

The ALJ's findings that Plaintiff would not be disabled if he stopped his substance abuse are not sufficiently detailed to allow this Court to understand the basis for his conclusion and are therefore inadequate. He found that Plaintiff had a polysubstance abuse disorder involving alcohol, marijuana, and methamphetamines. AR 24. The ALJ correctly noted that he was required to "evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use." AR 23. In conducting that evaluation, the ALJ relied on Plaintiff's evaluation by Dr. Howard on July 6, 2015, stating:

> The evidence indicates that in July 2015, although the claimant was using some marijuana and alcohol, he apparently was not using methamphetamines, or at least not to the degree demonstrated in 2016 and 2017. Therefore, Dr. Howard's conclusions are relied on to describe the severity of the claimant's impairments in the absence of drugs and alcohol.

AR 26. The ALJ fails to adequately explain how Dr. Howard's examination, which was conducted during a time period when Plaintiff "was using some marijuana and alcohol," supports the ALJ's conclusion about the severity of Plaintiff's impairments "in the absence of drugs and alcohol." The ALJ appears to distinguish between Plaintiff's use of methamphetamines and his

use of marijuana and alcohol, and the ALJ may have concluded that without the use of methamphetamines Plaintiff would not have been disabled, regardless of his use of other substances. However, this extrapolation is not clear from the record.

The Commissioner's cross-motion for summary judgment echoes this lack of clarity in the ALJ's decision by focusing exclusively on Plaintiff's use of methamphetamines. *See, e.g.,* Dkt. 28 at 4 (stating that the ALJ found Plaintiff "capable of performing at RFC level when not abusing meth" and arguing that "Plaintiff's treatment records show that he was doing well before he started using meth"); *id.* at 4-5 (citing toxicology screens that were "negative for meth"). The Commissioner frames the relevant question as "whether, if Plaintiff was not using meth, he would still be found disabled." *Id.* at 5. This is incorrect. The relevant question is whether Plaintiff would still be found disabled *if he stopped using drugs or alcohol*. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b). The ALJ found that Plaintiff used not only methamphetamines, but also alcohol and marijuana. Dkt. 24. The ALJ does not explain how he extrapolates Plaintiff's RFC "[i]f the claimant stopped the substance use" from Dr. Howard's examination, which occurred while Plaintiff was using alcohol and marijuana. AR 26, 27.

In evaluating whether a claimant's substance abuse is a material contributing factor to his disability, "a period of sobriety would be diagnostically ideal in the sense that it would eliminate DAA as a variable and thus allow for a more straightforward disability determination." *Fulghum v. Colvin*, No. 4:13-cv00978-KAW, 2014 WL 3866673, at *9 (N.D. Cal. Aug. 5, 2014). However, a period of sobriety is not required. *Id.*; *see also* SSR 13-2p ("there does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability"). Where such evidence does not exist, an ALJ's DAA analysis is, of necessity, hypothetical. *See Lockwood*, 2013 WL 1964923, at *9. However, the ALJ must still support his DAA conclusion with substantial evidence. *Id.* Here, although the ALJ could properly consider Dr. Howard's evaluation of Plaintiff even though he was using marijuana and alcohol at the time, the ALJ failed to adequately explain and support his conclusion that Plaintiff would not be disabled if he stopped all substance use.

In this context, the Court also cannot conclude the ALJ's rejection of other medical opinions was proper. The ALJ acknowledged that Childs/Franklin's "overall assessment was that the claimant would not be able to function with other than marked to extreme limitations in all aspects of work-related activity," but discounted this assessment for reasons including that it "failed to take into consideration undisclosed drug abuse." AR 30; *see also* AR 555-556. However, although the Childs/Franklin report noted "[t]here was no evidence of substance use on the day of the evaluation," the report stated that Plaintiff "described self-medicating with substances" including marijuana, beer, and cigarettes. AR 551. This is similar to Dr. Howard's recitation of Plaintiff's reports of marijuana and alcohol use. AR 451, AR 453. Yet unlike Dr. Howard, Childs/Franklin find significant limitations on Plaintiff's ability to work. AR 555-556. Given this conflicting medical evidence, the ALJ was required to give specific and legitimate reasons why he adopted Dr. Howard's opinion rather than the Childs/Franklin opinion. The ALJ failed to provide such reasons. Similarly, contrary to the ALJ's statement that "neither [Dr. Boutelle nor Mr. Schloss] discussed the effects of the claimant's substance use on his ability to function," both providers concluded that Plaintiff's impairments were not caused by substance intoxication/dependence/withdrawal." AR 29, AR 538, AR 543. Again, the ALJ failed to adequately explain why he relied on Dr. Howard's conclusions to describe the severity of Plaintiff's impairments in the absence of drugs and alcohol but rejected the conclusions of other medical sources on that issue.[2]

In a summary paragraph in the ALJ's opinion, the ALJ stated that Plaintiff's "symptoms of mood instability, delusions, grandiose speech, and marked difficulty interacting with others was noted to be related to use of methamphetamines, alcohol, and PCP hallucinogens in April 2015." AR 28. In support of this statement, the ALJ cited "Exhibit 4F, p. 2," which is page AR 423 of the Administrative Record. That page does not mention substance use, much less link it to Plaintiff's symptoms. Elsewhere in the same document, which appears to be from April 2016, there is a checklist noting that Plaintiff had used alcohol within the previous 90 days and had used

---

[2] The parties' arguments regarding the opinions of Dr. Ying are addressed in Sections IV.A.2. above and IV.E below.

11

amphetamines and PCP hallucinogens in the past (but not within the previous 90 days). AR 425. Again, the document does not link this substance use to Plaintiff's symptoms. In the same summary paragraph, the ALJ states that "with some abstinence and use of medications, [Plaintiff] was described as neat and clean, cooperative, appropriate mood and affect, and logical speech," citing Exhibit 6F at pp. 2-3 (which is AR 442-443 in the Administrative Record before the Court). Although that document supports the ALJ's statements about Plaintiff's appearance, general behavior, and emotional reactions, it does not discuss his abstinence from substance use. *See* AR 441-449. In fact, the document notes recent marijuana use, although "less than in the past, approx 1-2x/week." AR 442. Thus, to the extent the summary paragraph in the ALJ opinion at AR 28 is meant to explain the ALJ's conclusions about Plaintiff's functioning with and without substance use, it is not supported by the record.

Accordingly, on the issue of the ALJ's DAA analysis, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment.

**C.     Plaintiff's Credibility**

Plaintiff challenges the ALJ's assessment of his credibility. Dkt. 23 at 8-9. The ALJ found that "[i]f the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." AR 28.

"Where, as here, the ALJ has found that the claimant has 'presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged' and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Anderson v. Saul*, 783 Fed. Appx. 697, 698 (9th Cir. 2019) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Under the specific, clear and convincing standard, the ALJ must identify the testimony she found not credible and link that

1  testimony to the particular parts of the record supporting her non-credibility determination."
2  *Anderson*, 783 Fed. Appx. at 698 (quoting *Brown-Hunter*, 806 F.3d at 494) (internal quotation
3  marks omitted).

4      The ALJ expressly tied his evaluation of Plaintiff's credibility to his ultimate conclusion
5  regarding Plaintiff's RFC.  AR 28.  As discussed in Section IV.E. below, the Court concludes the
6  ALJ's RFC determination was erroneous.  Under these circumstances, the ALJ must reassess
7  Plaintiff's credibility based upon an appropriate evaluation of the medical evidence and RFC.  *See*
8  *Klee v. Berryhill*, No. 17-cv-00697-DMR, 2018 WL 3956337, at *17 (N.D. Cal. Aug. 17, 2018).

9      Accordingly, on this issue, the Court **GRANTS** Plaintiff's motion for summary judgment
10 and **DENIES** the Commissioner's cross-motion for summary judgment.

### D.  Lay Witness Testimony

Plaintiff argues that the ALJ erred in rejecting, without comment, the third-party function report completed by Plaintiff's mother.  Dkt. 23 at 9.  The Commissioner concedes that the ALJ did not specifically address the mother's report, but argues that any error was harmless because the mother's description of Plaintiff's activities of daily living was consistent with the ALJ's RFC determination.  Dkt. 28 at 7.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014). (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).  "[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make."  *Tobeler*, 749 F.3d at 833 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  But "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment."  *Id.* (citations and internal quotation marks omitted).

The third-party function report completed by Plaintiff's mother included information concerning limitations affecting Plaintiff's memory, concentration, and understanding.  AR 199-

13

200.  The ALJ did not reference Plaintiff's mother's testimony in his opinion and consequently did not indicate what, if any, weight he assigned to the mother's opinion.  Information provided by Plaintiff's mother was competent evidence and could not be disregarded without comment.  *Tobeler*, 749 F.3d at 833.  The ALJ erred in disregarding such information without providing reasons for doing so.

"[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (citing *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)) (internal quotation marks omitted).  In *Molina*, the Ninth Circuit examined whether the "ALJ's failure to discuss the testimony from [the plaintiff's] family members was inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d 1104 at 1122 (internal citations and quotation marks omitted).  The Court noted that though "the ALJ failed to explain her reasons for rejecting the lay witnesses' testimony. . . [t]hat testimony . . .  did not describe any limitations beyond those [the plaintiff] herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons." *Id.*  The Court concluded that "[b]ecause the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [the plaintiff's] testimony . . . the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination" and the error was deemed harmless. *Id.*

Here, by contrast, the Court concludes in Section IV.C. that the ALJ improperly rejected Plaintiff's subjective testimony.  Given that conclusion, it is unclear whether the ALJ's failure to give specific reasons for rejecting the function report prepared by Plaintiff's mother ultimately altered the nondisability determination.  The ALJ must correct this issue on remand.

Accordingly, on this issue, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment.

### E.     Residual Functional Capacity Determination

A claimant's RFC is defined as the most he can do despite his impairments.  20 C.F.R. § 404.1545(a)(1).  The ALJ must determine whether the claimant has the RFC to perform his past relevant work or make an adjustment to other work.  *Ghanim*, 763 F.3d at 1160.  Here, the ALJ concluded that if Plaintiff stopped the substance use, "he would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  he is limited to simple, routine tasks with simple work-related decisions" and "[h]e occasionally could respond appropriately to supervisors, coworkers, and the public."  AR 27.

In challenging the ALJ's RFC determination, Plaintiff again criticizes the ALJ's evaluation of the medical evidence, arguing that "the ALJ failed to specifically identify any medical evidence that supports any aspect of the RFC finding."  Dkt. 23 at 10.  Plaintiff notes that the ALJ mentioned the opinion of Dr. Ying that Plaintiff "was capable of at least simple, repetitive work with limited public contact" (AR 29), but Plaintiff argues that the ALJ failed to indicate what, if any, weight he gave Dr. Ying's opinion.  Dkt. 23 at 10.  Plaintiff also argues that the ALJ's RFC determination failed to incorporate Dr. Ying's finding that Plaintiff was moderately limited in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  *Id.* (citing AR 102).  Plaintiff further argues that the ALJ also ignored "contrary opinion evidence" from Dr. Lucila and rejected the opinions of Drs. Geringson, Boutelle, and Franklin.  *Id.*

With respect to the ALJ's evaluation of Dr. Ying's opinion, the Commissioner relies on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008), for the proposition that the moderate limitations Dr. Ying assessed were not an RFC determination.  Dkt. 28 at 8.  According to the Commissioner, the limitations identified by Dr. Ying "were merely an assessment of Plaintiff's functioning, not a determination of the most he could still do, despite his limitations; that determination was contained in the narrative discussion section of the opinion where Dr. Ying indicated that Plaintiff could perform 'simple and complex tasks.'"  *Id.* (citing AR 101-103).  The

15

medical record in *Stubbs-Danielson* included opinions that Plaintiff had a moderately limited ability "to perform at a consistent pace without an unreasonable number and length of rest periods" as well as other pace limitations. *Stubbs-Danielson*, 539 F.3d at 1173. The ALJ's RFC assessment in that case did not explicitly note pace limitations. The Ninth Circuit held that the ALJ did not err by "translat[ing] [the claimant's] condition, including the pace and mental limitations, into the only concrete restrictions available to him—[one physician]'s recommended restriction to 'simple tasks.'" *Id.* at 1175.

However, "the Ninth Circuit and district courts in the Ninth Circuit have held that *Stubbs-Danielson* does not control in cases where the limitations relate to functional areas other than concentration, persistence, and pace, such as social functioning and attendance." *Panziera v. Berryhill*, No. 17-cv-02719-LHK, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) (citing cases). Moreover, although *Stubbs-Danielson* "has been interpreted as endorsing a more general approach of allowing the ALJ to translate medical findings relating to mental limitations into 'concrete' work-related RFC restrictions," a "proposition that *Stubbs-Danielson* may be construed as generally permitting an ALJ to 'translate medical findings related to mental limitations into 'concrete' work-related RFC restrictions … sweep[s] too broadly." *DeBruin v. Saul*, No. 18-cv-03802-VKD, 2019 WL 4751890, at *10 (N.D. Cal. Sep. 30, 2019) (citing *Hurley v. Astrue*, No. C-12-1993 EDL, 2013 WL 12125536 (N.D. Cal. Apr. 15, 2013)).

Here, to the extent the ALJ's RFC determination attempted to "translate" the cited opinion of Dr. Ying into concrete RFC limitations, that attempt was incomplete at best. As discussed in Section IV.A.2. above, the ALJ's RFC determination failed to address, without any explanation, the opinions of Drs. Lucila and Ying that Plaintiff had moderate limitations in his ability to complete a normal workday or workweek. AR 84, 102. Moreover, although in his DAA analysis the ALJ relied on Dr. Howard's opinion regarding Plaintiff's limitations in the absence of substance use, the ALJ ignored Dr. Howard's opinion as to Plaintiff's work-related abilities, such his opinion that Plaintiff had moderate to marked limitations in ability to adapt to changes in a working environment and moderate limitations in his ability to attend to and concentrate on usual work situations. AR 453.

In order to disregard these aspects of the doctors' opinions, the ALJ had to provide either "clear and convincing reasons" or "specific and legitimate reasons," depending on whether these doctors were contradicted by another doctor in the record. *Betts v. Colvin*, 531 Fed. Appx. 799, 800 (9th Cir. 2013) (citation omitted). The ALJ provided no reasons for disregarding aspects of the opinions of Drs. Lucila, Ying, and Howard, so the Court must remand. *Id.*

Accordingly, on this issue the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment.

### F.     Vocational Expert Testimony

Plaintiff argues that the ALJ erred by posing hypotheticals to the vocational expert who testified at the hearing that were vague, inconsistent with the Dictionary of Occupational Titles, and incomplete as to Plaintiff's limitations. Dkt. 23 at 10-12.

The Commissioner may carry his burden at Step 5 of the disability inquiry by identifying specific jobs existing in substantial numbers in the national economy that the claimant can perform "by eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Because, as discussed above, the ALJ erred with respect to the evaluation of the medical evidence, the DAA analysis, Plaintiff's credibility, the third-party function report, and Plaintiff's RFC, on remand the ALJ must also consider whether the hypotheticals posed to the vocational expert must be revised to correctly reflect Plaintiff's limitations and restrictions.

Accordingly, on this issue, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment.

### V.     DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin,* 759 F.3d 995, 1019 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th

17

Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  On remand, the ALJ must properly evaluate the evidence based on applicable law and the guidance provided in this opinion.  It is not the Court's intent to limit the scope of the remand.

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: October 20, 2020

*[signature]*

SUSAN VAN KEULEN
United States Magistrate Judge